DECISION
This is an appeal by defendant, Marlon R. Burroughs, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas, following a jury trial in which defendant was found guilty of attempted murder and felonious assault.
On November 13, 1998, defendant was indicted on one count of attempted murder, in violation of R.C. 2923.02 and 2903.02, and two counts of felonious assault, in violation of R.C.2903.11.
The case came for trial before a jury beginning on October 7, 1999. The first witness for the state was the alleged victim, Toya Desiree Wright, who gave the following testimony regarding the events at issue. In November of 1998, Wright resided at 1113 Summit Street with her two children. Wright was also eight months pregnant at the time. Wright's boyfriend, Jonathan Kendrick, engaged in the sale of marijuana, and he sometimes sold drugs at Wright's apartment.
At approximately 11:00 p.m. on November 4, 1998, the defendant went to Wright's apartment and knocked on the door. Wright opened the door, and the defendant asked if Kendrick was at home. Wright stated that Kendrick was not there, and the defendant responded, "I will go page him." (Tr. 23.)
A short time later, the defendant knocked on the door a second time. The defendant told Wright, "Jonathan told me to come in the house and wait for him." (Tr. 24.) Wright, who had met the defendant prior to that evening, let him inside the apartment.
Wright sat down on the couch to watch television, and the defendant sat at the other end of the couch. The defendant asked if he could smoke, and Wright indicated that she did not object. After a few minutes, the defendant "swung around" and hit Wright on the left side of her head with a hard object. (Tr. 27.) Wright thought the defendant hit her with a brick.
Wright started screaming and kicking her feet at the defendant. The defendant began to choke Wright, and he demanded to know where Kendrick was. While he was choking her, the defendant "kept saying, I'll kill you, I'll kill you, bitch, you made me do it." (Tr. 29.) The defendant then told Wright to "[g]o to sleep." (Tr. 30.) Wright saw the defendant holding a knife while he was choking her, and the defendant told her to "shut the fuck up, bitch, * * * I will kill your fucking ass." (Tr. 30.) The defendant stabbed Wright with the knife during the incident.
Wright managed to get on the floor and she started crawling toward the door. Wright then turned around, reached over and grabbed a birdcage, and while attempting to hit the defendant with it; she struck him on the left arm. Wright was able to get to the door and run outside the apartment, where she cried for help. One of Wright's neighbors in the apartment complex eventually opened a door and allowed Wright inside.
Wright was taken to a hospital and treated for a stab wound to the thyroid gland. Wright also received stitches on her face. Wright testified that she had no idea why the defendant attacked her that night. She stated that nobody else was with the defendant at the apartment during the incident.
On November 4, 1998, Lilly Chapman resided at 1115 Summit Street in the apartment next door to Wright's apartment. That evening, Chapman observed an individual on the porch of Wright's apartment. Later that night, Chapman heard a "thump" next door. (Tr. 55.) She then heard a scream, followed a short time later by the sound of banging on her apartment door. Chapman picked up the telephone and dialed 911. She told the operator that there was "some girl hollering down the street, '[s]omeone is trying to kill me.'" (Tr. 55.)
Thelma Burroughs is the grandmother of the defendant. In November of 1998, the defendant was residing at his grandmother's residence at 302 East Fourth Avenue. The defendant arrived home late on the night of November 4, 1998. Burroughs testified that the defendant was wearing green pants, and she noticed "some blood" on the pants. (Tr. 66.) Burroughs asked him what happened and he responded, "it's nothing." (Tr. 66.) The defendant then ran up the stairs. He came back downstairs with a jacket and left the house.
Police officers questioned Burroughs that night about whether she had any missing knives. Burroughs indicated that a kitchen knife, which she described as a black steak knife, was missing from the residence.
Columbus Police Officer Kimberly Allen works in the crime scene search unit of the detective bureau. Officer Allen testified that a piece of brick was collected at the victim's apartment. A knife handle was also recovered.
Sahara Stephens resides at 1121 Summit Street. At approximately midnight on November 4, 1998, Toya Wright banged on Stephens' door, screaming for help. Wright was "bloody," and "cut up real bad." (Tr. 96.) Stephens pulled her into her apartment and called 911. Wright was screaming, "[p]lease help me, he's gonna kill me, he's trying to kill me." (Tr. 97.) Stephens asked Wright who did this to her, and Wright responded, "Marlon." (Tr. 98.) Police officers and medical personnel arrived at the scene a short time later.
Columbus Police Officer Glenn Siniff testified that he was on patrol on November 4, 1998, and that he was dispatched to 4041 Sullivant Avenue that evening to pick up a suspect. Officer Siniff and two other officers knocked on the door of the residence and the defendant's uncle opened the door. The officers asked if the defendant was inside, and the man pointed to an individual sitting in a dining room chair. The defendant was then placed under arrest. As the defendant was putting on his shoes, "he was crying and he was saying I didn't stab her." (Tr. 110.)
The defendant did not present any witnesses on his behalf. Following deliberations, the jury returned verdicts finding defendant guilty of attempted murder and felonious assault.
On appeal, defendant sets forth the following two assignments of error for review:
First Assignment of Error:
 Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.
Second Assignment of Error:
 The trial court erred by imposing the maximum allowable sentence without specifically finding the factors set forth in R.C. 2929.14(C).
Under his first assignment of error, defendant asserts that he was denied effective assistance of counsel. Specifically, defendant contends that his trial counsel was ineffective in failing to request a jury instruction on the law governing the absence of proof of motive.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-prong test set forth inStrickland v. Washington (1984), 466 U.S. 668. First, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation[.]" State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Second, the defendant must establish prejudice arising from counsel's performance. Id.
In arguing that his trial counsel was ineffective in failing to request a jury instruction regarding the absence of motive on the part of defendant for the attack, defendant relies on State v. Lancaster (1958), 167 Ohio St. 391. Defendant cites language from that case providing that "evidence of motive in murder cases is always relevant and material." Id. at 396. In response, the state argues that defendant's reliance on Lancaster
is misplaced, and that the decision in Lancaster actually supports the proposition that defendant's trial counsel was not deficient in failing to request such an instruction.
In Lancaster, the issue presented was whether the trial court committed prejudicial error in declining defense counsel's request "`to charge in substance that the presence or absence of a motive is a circumstance which the jury may consider in determining the guilt or innocence of the defendant.'" Id. at 396. While the Ohio Supreme Court initially noted that "evidence of motive in murder cases is always relevant and material," the court further stated that "`the proof of motive is not essential to a conviction of the crime of homicide.'" Id. at 396-397. The court in Lancaster further held:
 In our opinion, in a murder case, where the evidence is circumstantial, the identification of the killer is not shown by direct evidence, and, therefore, his identification must be proved, motive or lack thereof becomes an important question, and in such a case the trial court has a duty to instruct the jury that it should take the evidence on that question into consideration, together with all the other evidence and circumstances, in determining the guilt or innocence of the accused. However, where there is direct evidence of a deliberate killing without provocation, and the determination of the guilt or innocence of the accused depends upon the credibility of witnesses to the act of killing, the question of motive need not be submitted to the jury. * * * Id. at 398. (Citations omitted.)
In Lancaster, the court concluded that it was not error for the trial court to reject defendant's requested instruction on motive where there was direct evidence of the killing in the form of the testimony of the victim's daughter. Specifically, the court held that "the determination of the guilt or innocence of the defendant depended entirely upon the credibility of the direct witnesses to the killing, and it was not essential that the court make any charge to the jury with reference to motive." Id. at 398.
In the instant case, the state argues that, similar to the facts of Lancaster, the prosecution presented direct evidence in the form of Wright's testimony, in which she unequivocally stated that the defendant was her assailant. The state cites evidence that Wright had met the defendant prior to the incident, that Wright specifically named the defendant as her assailant on the night of the incident, and that she positively identified the defendant at trial as her attacker. The state maintains that, under these circumstances, where the determination of guilt or innocence depended upon the credibility of a direct witness, the court was not required to charge the jury with reference to motive; thus, the state argues, trial counsel was not deficient in failing to make such a request. We agree with the state's interpretation of Lancaster. Here, where the state presented direct evidence of defendant's guilt, but was not required to prove motive for the crime, we find no reversible error arising from the failure of trial counsel to request a jury instruction on motive.
Accordingly, defendant's first assignment of error is overruled.
Under his second assignment of error, defendant argues that the trial court erred by imposing the maximum sentence without specifying the factors set forth under R.C. 2929.14(C). More specifically, defendant contends that the trial court erred in failing to find that defendant committed the "worst form" of the offense or that he posed the "greatest likelihood" of committing future crimes.
R.C. 2929.14(C) provides that a trial court may impose the longest prison term "only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * * and upon certain repeat violent offenders."
Upon review of the record, we agree with defendant's contention that the trial court failed to enter the required findings under R.C. 2929.14(C) in order to impose a maximum prison term. We further note that the state has conceded that the trial court failed to expressly make the requisite statutory findings. Accordingly, we sustain defendant's second assignment of error and remand this matter to the trial court to re-sentence appellant and address the provisions of R.C. 2929.14(C), including the entering of appropriate findings for review.
Based upon the foregoing, defendant's first assignment of error is overruled, defendant's second assignment of error is sustained, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
BOWMAN, P.J., and BRYANT, J., concur.